UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:

    CHARLES ZIZI,                                    Chapter 7 (Involuntary)

                                                          Case No. 16-44872 (ESS)
                      Debtor.
---------------------------------------------------------x

## DECLARATION OF MICHAEL KANDHOROV
### REGARDING GREEN GROUP'S OPPOSITION TO THE PETITION

Pursuant to 28 U.S.C. §1746, the undersigned, MICHAEL KANDHOROV, declares as follows:

    1.    I am the principal of Green Group 11 LLC ("Green Group"). I make this declaration to apprise the Court of Green Group's position regarding opposition to the involuntary bankruptcy petition (the "Petition") that was filed against Charles Zizi ("Zizi"). I begin by addressing the inappropriate remarks that the attorney who has appeared for Florida Corporate Funding, Inc. ("FCF") made about Green Group in the declaration that that attorney ("FCF Counsel") filed as Docket No. 50.

    2.    FCF Counsel has no personal knowledge of the facts. Yet, in Docket No. 50, she presumes to make accusations such as "Green Group has advanced more unreported income to the Debtor in an obvious attempt to defraud his creditors" (para. 3[1]), "Green Group is not a good faith purchaser; rather, Green Group is involved in an actual fraudulent conveyance under New York Debtor-Creditor Law § 276" (para. 29), and "the role of Green Group in this proceeding has been to obstruct the process" (para. 30). These comments are untrue and outrageous. The

---
[1] References "para.__" are to numbered paragraphs in Docket No. 50.

1

following are the facts, from me, who has personal knowledge of Green Group and its transactions with the debtor ("Zizi").

3.      I met Zizi in 2015. At the time, Zizi was embroiled in litigation (the "Litigation") with 10821 Holdings L.L.C. ("10821"). 10821, which was owned by a person named Shabsi Pfeiffer, owned two properties located in Brooklyn: 220 Greene Ave. and 850 Greene Ave. According to ACRIS records, 10821 acquired both of those properties in 2013. 10821 acquired 220 Greene Ave. from Zizi, and it acquired 850 Greene Ave. from RCM Group Inc. ("RCM"). The ACRIS records for 10821's acquisition of 220 Greene Ave. are Exhibit "B" to Docket No. 49. The ACRIS records for 10821's acquisition of 850 Greene Ave. are annexed as Exhibit "A" to this declaration. Based on conversations that I had with Zizi, it was my understanding Zizi was the owner of RCM, the entity from whom 10821 had acquired 850 Greene Ave. As I understood the Litigation, Zizi and RCM wanted to undo the sales of the two properties to 10821. 10821, on the other hand, wanted to keep those properties.

4.      When I entered the picture in 2015, both of those properties had, for several years, been seriously "under water". The amounts of the "of record" mortgages, liens, and judgments relating to Zizi or those properties were such that those properties were effectively devoid of marketable value. It was, accordingly, of no surprise to me that, according to the ACRIS records, 10821 had only paid $10,000 for each of those properties, because that was probably more than what their marketable title was worth.

5.      I am in the business of buying and developing distressed real estate. That includes real estate that is "under water" from an abundance of debt. When real estate is "under water", mortgagees and lienors (including judgment lienors) are often willing to accept fractions of their "of record" liens, because that is often more than what could be obtained by foreclosing on their

liens. That is especially so when the lienors know that their "of record" liens are subject to infirmities, such as statute of limitations problems or underlying default judgments that were improperly obtained.

6. Because I am in the business of buying and developing distressed real estate, I view and evaluate property from a perspective that is different from the ordinary "market purchaser". As viewed from my perspective, 220 Greene Ave. and 850 Greene Ave. were acceptable prospects for purchase and development, provided I could reduce or eliminate "of record" mortgages, liens, and judgments to a degree that made economic sense. Accordingly, I formed a company (Green Group) to acquire 220 Greene Ave. from 10821. In addition, I arranged for another of my companies (1412 Herkimer Realty Corp. ["1412 Herkimer"]) to acquire 850 Greene Ave. from 10821.

7. I recognized that, in order to acquire those properties, I would have to satisfy both the economic desires of 10821 (who was on one side of the Litigation about those properties) and, on the other hand, the economic desires of Zizi (who was on the other side of that Litigation). I gave 10821 a handsome sum to sell those properties to Green Group and 1412 Herkimer, and 10821 made a handsome profit over the $10,000 that it had originally paid for each of those properties. I did that because, as noted above, as a developer of distressed properties, I can "create value" where there is no "market value". But there were two sides to the Litigation, and although I satisfied 10821's economic desires, I also had to satisfy Zizi's economic desires. I did that by entering into an agreement with Zizi whereby he could obtain a 40% interest in Green Group. But that 40% interest was not a "free ride". In order to realize that interest, Zizi had to cooperate with and assist me and my companies in reducing or eliminating the "of record"

mortgages and liens (including judgment liens), which were attributable to the pre-2013 period when Zizi had owned 220 Greene Ave. and RCM had owned 850 Greene Ave.

8.  Zizi's promised cooperation in this regard has, at best, been questionable. I believe that Zizi has been on again/off again colluding with the persons who filed the involuntary bankruptcy petition against him (the "Petition") in an effort to keep FCF's judgment (a default judgment which was improperly obtained) as a lien on 220 Greene Ave. That is a violation of the promised consideration for Zizi obtaining the aforesaid 40% interest. And that violation is undermining the enormous investment that Green Group and I made in acquiring and developing that property. How this violation will impact on whether Zizi gets all, some, or none of the 40% interest is an issue that this Court will have to resolve if Zizi is adjudicated a bankruptcy debtor and, therefore, has his assets, including the potential 40% interest, administered in this Court.[2]

9.  Compare the above – the actual facts – with the baseless, inflammatory accusations that FCF Counsel has made. Where in any of the actual facts is there "unreported income" that Green Group "advanced … to the Debtor in an obvious attempt to defraud his creditors"? If anything, what Green Group did has *benefited Zizi's creditors as a whole.* Because, without Green Group's investment, Zizi and 10821 would probably still be in litigation over which of them should own properties that were "under water" and that if sold in the "ordinary market" would yield next to nothing. Without Green Group, Zizi's general creditors would have *nothing* to look to. It is only because of Green Group's and my special business model of

---

[2] Under the arrangement with Zizi, if all lien issues are ultimately cleared and quieted to my satisfaction, then the 850 Greene Ave. property will pass from my company, 1412 Herkimer, which owns that property, to my other company, Green Group. In that event, the 40% interest that Zizi's general creditors can share in will include both 220 Greene Ave. and 850 Greene Ave.

evaluating, investing in, and developing distressed properties that Zizi's general creditors now have an opportunity to share 40% of value that has been created by Green Group.

10. The person who is not looking out for Zizi's creditors as a whole is not Green Group. It is FCF. FCF entered into agreements with Zizi to release -- for $25,000 apiece -- the judgment liens that FCF claimed on each of 220 Greene Ave. and 850 Greene Ave., and Green Group and 1412 Herkimer (the respective owners of those properties) paid those sums to FCF. (See Exhibit "B".) Nevertheless, FCF has not delivered releases of its claimed liens.

11. That lien release dispute will not be litigated at this time in these papers. That litigation is for another day. At this time, the point is simply that it is clear that FCF wants to try to take the whole of Green Group's property (220 Greene Ave.) for itself, by foreclosing on a judgment lien that should be released. If FCF succeeds in reneging on its agreement to release that lien, that will wipe out all of Green Group's interest in that property, *and with it the 40% interest that Zizi's general creditors could share*.[3]

12. FCF Counsel states that "the role of Green Group in this proceeding has been to obstruct the process". Obstruct what process? The "process" of FCF reneging on a lien release agreement, so that it can enrich itself by destroying a 40% interest that other creditors could share?

13. FCF Counsel devotes much effort trying to falsely portray Green Group as "bad". It is obvious that such inflammatory posturing is simply an anticipatory attempt to deflect attention from what FCF Counsel knows will ultimately be revealed when the Court discovers more about FCF. FCF's principal is Stephen Schorr, a Florida attorney, and FCF is a lending

---

[3] As noted in the accompanying memorandum of law, "FCF" may actually be Randall Funding LLC or another company of Lorenzo DeLuca ("DeLuca"). But irrespective of who "FCF" is, it is reneging on a lien release that could benefit Zizi's general creditors.

business that Mr. Schorr owns and operates. Mr. Schorr was suspended from the Florida Bar after pleading guilty to conduct regarding FCF that involved "dishonesty, fraud, deceit, or misrepresentation". (See page 7 of Exhibit "K" to the accompanying Additional Declaration of Robert J. Kaplan.) I understand why, knowing that this would ultimately be revealed, FCF Counsel sought to deflect the impact of that revelation, by anticipatorily trying to paint Green Group as "bad". But there is a critical difference between FCF and Green Group: Mr. Schorr's "dishonesty, fraud, deceit, or misrepresentation" are facts that he has admitted and that the State of Florida has determined; FCF Counsel's false portrait of Green Group is a figment of imagination.

14. As noted in Docket No. 49, Green Group opposes the Petition. Green Group does not oppose the Petition because Green Group or I like Zizi. We do not. Nor do we approve of the way that Zizi has dealt with others, including his various creditors. Green Group opposes the Petition, because I believe that what motivated the Petition was an effort by DeLuca (another attorney who was suspended from the bar) to cajole or pressure Zizi into not honoring his promised assistance in eliminating or reducing mortgages and liens, by holding the specter of bankruptcy over Zizi's head. Clearly, the Petition was not motivated by a desire to help Zizi's creditors as a whole, because, as noted above, what FCF wants is *not* consistent with that.

15. There is, however, a countervailing consideration. From what I have seen, Zizi is not someone who can be trusted to deal with his affairs in an honest manner. That includes following through on his commitments to Green Group and me in an honest manner, so that his

general creditors can reap the benefit of the aforesaid 40% interest.[4] Weighing the bad motive behind the Petition against the prospect of having an independent Trustee take charge of Zizi's affairs and commitments has led me to the conclusion that the wiser course is to have a Trustee.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 4, 2018 in Brooklyn, New York.

/s/ *Michael Kandhorov*

Michael Kandhorov

---

[4] In para. 29 of Docket No. 50, FCF Counsel refers to checks that Zizi appears to have received from 10821. The first that I learned of those checks was when I saw Docket No. 50. Previously I was under the impression that, when Green Group bought 220 Greene Ave. from 10821, the reason 10821 did not turn over security deposits to Green Group for the two tenants who then resided in that property was because 10821 did not have those deposits. I was shocked to discover, from Docket No. 50, that, unbeknownst to me, Zizi got 10821 to issue checks to an entity other than Green Group, and then apparently pocketed the proceeds of those checks for himself. This recent revelation of yet another act of dishonesty on Zizi's part persuaded me that, weighing an improperly-motivated Petition against an independent Trustee, having a Trustee is the wiser course.