UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:

        CHARLES ZIZI,                           Chapter 7 (Involuntary)

                                                  Case No. 16-44872 (ESS)

                    Debtor.
---------------------------------------------------------x

## <u>GREEN GROUP'S MEMORANDUM OF LAW</u>

      This memorandum is respectfully submitted on behalf of Green Group. Accompanying this memorandum is a Declaration by Michael Kandhorov, the principal of Green Group, (the "Kandhorov Declaration") and an Additional Declaration by Robert J. Kaplan, Green Group's attorney (the "Kaplan Declaration").

      Green Group believes that this proceeding to place Zizi in involuntary bankruptcy is plagued by several legal infirmities. Ordinarily, Green Group would move to dismiss this proceeding, and it was previously inclined to do so. Nevertheless, as indicated in the Kandhorov Declaration, Green Group has since concluded that the wiser course – and the one that will better protect the interests of Green Group and Zizi's general creditors – is to have an independent Trustee appointed to take charge of Zizi's affairs. That, however, cannot be done unless the bankruptcy case moves forward, and the wisdom of having a Trustee appointed does not *ipso facto* eliminate the legal infirmities that may prevent this case from moving forward. As an officer of the court, the author of this brief is duty-bound to bring those legal problems to the Court's attention, so that the Court can determine if and how to proceed. Accordingly, this brief will address the several legal issues that we believe must be considered.

**The "Three" Requirement**

Zizi has more than 12 creditors. He cannot be placed in involuntary bankruptcy unless there are at least three creditors -- each meeting the requirements of 11 U.S.C. §303(b)(1) -- who are petitioning for that. On its face, the Petition did not meet that standard, because there was originally only one petitioner, Randall Funding LLC ("RFL"). That, however, does not end the inquiry, because, subsequent to the Petition's filing, two individuals and two entities professed to join in the Petition. We turn to analysis of each of those "joinders".

**Reginald Beauvais ("Beauvais")**

Beauvais is an individual who professed to join the Petition. His joinder is reflected in Docket No. 16.[1] In Docket No. 16, Beauvais alleges that Zizi owes him $66,000. How that amount was arrived at is not explained.[2] Beauvais was not mentioned in the Petition that RFL filed, and, accordingly, there was no allegation about Beauvais that Zizi was required to address in his Answer to that Petition.[3] Nevertheless, Zizi did mention Beauvais in his Answer, where he identified the amount due Beauvais as being $55,000. On the face of the record, the amount of Beauvais' claim is disputed, and Beauvais failed, on both of the opportunities that the Court ordered [Docket Nos. 32 and 45], to address that.

---

[1] Docket No. 16 is Exhibit "A" to the Kaplan Declaration.

[2] Docket No. 16 is the only submission that Beauvais made. Although the Court ordered in Docket No. 32 that all petitioning creditors (including Beauvais, who was specifically mentioned in that order) appear "in person" at the November 6, 2017 hearing, Beauvais never appeared. Nor did Beauvais supplement Docket No. 16 with any anything additional, even though the Court allowed him to [Docket No. 45].

[3] Zizi's Answer [Docket No. 7] is Exhibit "B" to the Kaplan Declaration.

The 2005 amendments to the Bankruptcy Code specifically added the factor of "dispute as to amount" as being fatal to a creditor's ability to be counted among the "three" of 11 U.S.C. §303(b)(1). There is disagreement among the courts as to how that newly-added "dispute as to amount" factor is to be applied. (Compare the collected cases cited in footnote 7 of *In re 3 Man Corp.*, 2014 Bankr. LEXIS 3675 (Bankr. M.D. Pa. 2014), *reconsideration granted*, 2016 Bankr. LEXIS 1720 to the collected cases cited in footnote 8 of that case.) Depending on how this Court comes down on the "dispute as to amount" issue, Beauvais may or may not be countable toward the "three".

## Paul Rousseau ("Rousseau")

Rousseau is another individual who professed to join in the Petition. His joinder is reflected in Docket No. 15.[4] In Docket No. 15, Rousseau alleges that his "claim" is $125,000. How that amount was arrived at is not explained.[5] Rousseau was not mentioned in the Petition that RFL filed, and, accordingly, there was no allegation about Rousseau that Zizi was required to address in his Answer to that Petition. Nevertheless, the documents that Rousseau filed in his state court action against Zizi belie the notion that the $125,000 amount referred to in Docket No. 15 can fairly be characterized as beyond dispute.

Rousseau's "claim" is predicated on a state court action that he brought against Zizi. The complaint in that action does *not* mention the $125,000 amount that Rousseau stated in Docket No. 15.[6] But even if it had, Zizi's default in answering does not make any amount that was stated

---

[4]  Docket No. 15 is Exhibit "C" to the Kaplan Declaration.

[5]  Docket No. 15 is the only submission that Rousseau made. Like Beauvais, Rousseau did not appear at the November 6 hearing pursuant to the Court's order in Docket No. 32, nor did he supplement Docket No. 15 with anything, even though the Court had allowed him to.

[6]  That complaint is Exhibit "D" to the Kaplan Declaration.

in that complaint an undisputed amount. New York's highest court is very clear on this point.

*See*, *McClelland v. Climax Hosiery Mills*, 252 N.Y. 347 (1930).

> "The defendant, by failing to answer, admits all traversable allegations contained in the complaint. (*Foster* v. *Smith*, 10 Wend. 377; Paine & Duer Practice, vol. 1, p. 635.) An allegation of damage is not, however, a traversable allegation. (*Emery v. Baltz*, 94 N. Y. 408, at 412.) It is not admitted by a defendant's failure to answer. (*Hartness v. Boyd*, 5 Wend. 563; *Howell* v. *Bennett*, 74 Hun, 555, at 558; *Thompson v. Halbert*, 109 N. Y. 329; *Lewis v. City Realty Co.*, 158 App. Div. 733; *Sutton v. Duntley*, 205 App. Div. 660.)"

*Id.* 252 N.Y at 351. Because "default" does *not* constitute a concession as to the amount (if any) that is owed, New York law requires that, even in cases of default, the amount due must be proved by competent proof at an inquest. *See*, *Bowdren v. Peters*, 208 A.D.2d 1020, 1021, 617 N.Y.S.2d 66, 67 (3rd Dep't, 1994). The court in Rousseau's state court action followed this course, by requiring Rousseau to file a Note of Issue and establish the amount (if any) that Zizi owed at an inquest that was to be held at the time of trial against the other, non-defaulting defendant to Rosseau's complaint.[7] (That order is Exhibit "E" to the Kaplan Declaration.) Significantly, even in that Note of Issue, which Rousseau filed on February 24, 2017, *after* the date of Docket No. 15, *he still made no reference to the $125,00 amount.* To the contrary, that Note of Issue claimed no amount and merely said that the amount was "to be determined at trial".[8]

---

[7]  That non-defaulting defendant was 10821, who is referred to in the Kandhorov Declaration.

[8]  That Note of Issue is Exhibit "F" to the Kaplan Declaration. The inquest against Zizi has not happened, nor can it, because of the automatic bankruptcy stay.

Against this background, Docket No. 15 appears to be nothing more than a subterfuge, whose filing was designed to give the Court the false impression that there was a creditor (Rousseau) with an "undisputed" $125,000 amount who had joined the Petition, when, in fact, there was nothing to support that proposition. Rousseau has been conspicuously silent on the point, despite an order of this Court that required him to personally appear and another order that allowed him to supplement Docket No. 15, which he did not.

What makes the inconsistency between Docket No. 15 and the state court record even more troubling is that the unsupported and insupportable Docket No. 15 was filed by an attorney who does not represent Rousseau. The court's ECF system identifies the filer of Docket No. 15 as being Yenisey Rodriguez-McCloskey, the attorney for Florida Corporate Funding, Inc. ("FCF"). Against the background of the below discussion regarding Petro, RFL, FCF, and the issue of champerty, Ms. Rodriguez-McCloskey's filing of Docket No. 15, which is inconsistent with the state court record, is disturbing.

**Petro, Inc. ("Petro")**

Even more disturbing than the circumstances which surround Rousseau/Docket No. 15 are the circumstances regarding Petro and its "joinder" in Docket No. 17.[9] Docket No. 17 was signed by John Sheerin. Mr. Sheerin appeared before this Court at the November 6, 2017 hearing

---

[9]  Docket No. 17 is Exhibit "G" to the Kaplan Declaration. According to the ECF system, Docket No. 17 was not filed by Petro. Like the Rousseau "joinder", Docket No. 17 was filed by Ms. Rodriguez-McCloskey, and it was filed *after Petro no longer owned the judgment*. Notwithstanding Bankruptcy Rule 1003, neither the filer of that document nor the assignee of the Petro judgment notified the Court of that assignment or its background, although they undoubtedly knew that the Court would interpret Docket No. 17 as indicating that an "unrelated" party (Petro) was "joining" in the Petition that RFL had filed.

and told the Court that back in December 2016, Mr. DeLuca ("DeLuca"), the principal of RFL,[10] approached Petro and asked for two things: (i) to sell Petro's judgments against Zizi and (ii) to make an affidavit of joinder in the Petition.[11] Petro assigned the judgments. Copies of those assignments are Exhibit "I" to the Kaplan Declaration.

On its face, that transaction was unlawful. New York Judiciary Law §489 makes it unlawful for any

> "corporation or association, directly or indirectly, itself or by or through its officers, agents or employees, [to] solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon".

The statute applies to any "corporation or association", whether acting "directly or indirectly". New York appellate courts construe statutes that prohibit conduct by a corporation or association as also prohibiting conduct by a limited liability company. *See, Michael Reilly Design, Inc. v. Houraney*, 40 A.D.3d 592, 835 N.Y.S.2d 640 (2nd Dep't, 2007). *See also*, *People v. Highgate LTC Mgt., LLC*, 69 A.D.3d 185, 887 N.Y.S.2d 298 (3rd Dep't, 2009). *And see*, *JMM Props. LLC v. Erie Ins. Co.*, 2013 U.S. Dist. LEXIS 5080 (N.D.N.Y. 2013), *aff'd* 548 Fed. Appx. 665, 2013 U.S. App. LEXIS 24680 (2d Cir. 2013). Judiciary Law §489 also applies to any

---

[10]  In Docket No. 14 DeLuca identified himself as being both an attorney and the principal of RFL. Although DeLuca appears to be a current member of the Bar, he was previously suspended from the Bar for impropriety regarding escrow funds and "willful failure to cooperate with the Departmental Disciplinary Committee's investigation". *See, In re DeLuca*, 230 A.D.2d 234, 655 N.Y.S.2d 516 (1st Dep't, 1997).

[11]  The except from the transcript of the November 6 hearing where Mr. Sheerin spoke is Exhibit "H" to the Kaplan Declaration.

natural person (like DeLuca) who is acting as "agent". The "thing in action" referred to in the statute includes a judgment, unless the assignee's eventual litigation on the assigned judgment is limited to collecting that judgment. *See, People v. Berlin,* 65 Misc. 2d 245, 317 N.Y.S.2d 191 (Co. Ct., 1971). But see *Justinian Capital SPC v. WestLB AG, N.Y. Branch,* 28 N.Y.3d 160, 43 N.Y.S.3d 218 (2016), where New York's highest court recently found a litigation to be champertous as a matter of law, even though the litigation was limited to an effort to collect the assigned debt.

As Mr. Sheerin told the Court, DeLuca's solicitation was *two-pronged*. DeLuca wanted not only an assignment but also an affirmation of joinder. Clearly, the *purpose* of the solicitation was so that this involuntary bankruptcy proceeding could be had. That transaction was unlawful.

It is obvious that DeLuca tried to be clever. As a lawyer and the principal of RFL, the filer of the Petition, DeLuca undoubtedly knew that if RFL or any of the other companies that DeLuca owns filed a "joinder" in conjunction with *disclosed* assignment of the Petro judgments (or any other judgment, such as that of FCF), it would be transparent that that was part and parcel of a transaction whose purpose was violative of the public policy that underlies Judiciary Law §489. So DeLuca used the following chronological sequence, which he hoped would hide this from the Court:

1.  He made the two-pronged solicitation in December;

2.  He had Petro make the "joinder" (prong one) in a document dated January 11, 2017;

3.  He waited two days (until January 13, 2017) to have Petro make the formal assignment (prong two); and then

4. He never revealed the assignment (let alone the two-pronged solicitation) to the

Court.[12]

Apart from being a calculated deceit upon the Court, the problem with such chronological

cleverness is that the unlawfulness that Judiciary Law §489 decries is not *when* the champertous

proceeding is brought or *by whom* it is brought. What Judiciary Law §489 proscribes is the

"purpose" that underlies a champertous solicitation. Here the two-pronged nature of the

solicitation makes that *purpose* obvious.

Allowing Petro's joinder – which was the product of a champertous solicitation - to

sustain the Petition raises fundamental public policy concerns. It is an elementary principle of

public policy that one cannot reap a benefit from their own wrong -- whether it be outrightly

illegal or simply immoral -- and certainly that they cannot enlist a court of equity as the vehicle

for such an endeavor. *See, Bankers Trust Co. v. Litton Systems, Inc*., 599 F.2d 488 (1979).

> "Courts will not aid a person 'who founds his cause of action upon his own
> immoral or illegal act'. *Restatement of Contracts § 598, Comment (a)* (1932); See
> also Restatement (Second) of Contracts, Tent.Dr.No.23, Introductory Note to Ch.
> 14, p. 46 (1977); 14 Williston on Contracts § 1630A (3d ed. 1972). This rationale
> is precisely the policy articulated in the New York decisions. In McConnell the
> court said that the court's concern is not with the position of the defendant;
> instead, the question is whether the plaintiff should be denied a recovery for the
> sake of public interests. 7 N.Y.2d at 469, 166 N.E.2d at 496, 199 N.Y.S.2d at 485.
> The well-known maxim that no one shall be permitted to profit by his own fraud
> summarizes the policy.  See *Riggs v. Palmer*, 115 N.Y. 506, 511-12, 22 N.E. 188,
> 190 (1889). See also *Reiner v. North American Newspaper Alliance*, 259 N.Y.
> 250, 256, 181 N.E. 561, 563 (1932); *Sturm v. Truby*, *supra*, 245 App.Div. at 360,
> 282 N.Y.S. at 437; *Sirkin v. Fourteenth Street Store, supra*, 124 App.Div. at 389-
> 90, 394, 108 N.Y.S. at 834, 837."

---

[12] Further evidence that this was a *planned and calculated* deception is that the assignment was not *on its face* made directly to the Petitioner, RFL. Instead, the named assignee was American Trade Credit LLC, which is apparently another DeLuca company. In Docket No. 50 Ms. Rodriguez-McCloskey has belatedly confirmed that RFL is the real party in interest of the Petro judgment. See footnote 3 at page 2 of Docket No. 50.

*Id*. 599 F.2d at 492. As a matter of public policy, Petro's "joinder" cannot sustain the Petition.[13]

**Florida Corporate Funding, Inc. ("FCF")**

FCF's joinder in the Petition presents similar public policy concerns. In the case of FCF, however, DeLuca has better obscured the trail of champertous conduct. The footprints on that trail are nevertheless still discernable.

FCF's counsel is Ms. Rodriguez-McCloskey. Inspection of court records reveals that both before this proceeding and *even during this proceeding* Ms. Rodriguez-McCloskey has been the attorney for DeLuca and RFL.[14] Moreover, according to the ECF system, it was Ms. Rodriguez-McCloskey who filed Petro's joinder [Docket No. 17]. Why was Ms. Rodriguez-McCloskey, who represents FCF (which is *supposedly* not simply a "front" for DeLuca), filing Docket No. 17 that was solicited by DeLuca? Moreover, Docket No. 17, which has nothing to do with FCF, contains a bizarre (crossed-out) reference to FCF. That reference makes no sense, unless, of course, it was a "Freudian slip" showing that DeLuca and FCF are really one and the same.

It is apparent from the carefully planned concealment of the champertous Petro transaction that DeLuca not only uses his companies to engage in champerty, but that he actively tries to conceal that. Against this background, the fact that Ms. Rodriguez-McCloskey – who time and again has been the attorney for DeLuca and RFL – is the one who now purports to be counsel for FCF that is "joining" in the Petition raises serious questions as to whether this is simply another cleverly-structured, concealed act of champerty that is being used to maintain a bankruptcy proceeding. We respectfully submit that the Court should hold a hearing – where

---

[13]  But see the discussion below regarding a possible alternative, equitable solution to the public policy issue.

[14]  See Exhibit "J" to the Kaplan Declaration.

DeLuca and Mr. Schorr of FCF appear and take the stand *in person*[15] -- so that the Court can assess what is really going on.

Unlike the Petro situation, where Petro assigned 100% of its judgments, Schorr and DeLuca may have "structured" their arrangement in a way whereby FCF is (i) retaining a "share" of the benefit that DeLuca hopes will be reaped in exchange for FCF's "joinder" and use of DeLuca's attorney, and (ii) keeping the "joinder claim" in FCF's "name", even though, as a practical matter, it is DeLuca who is controlling and funding that "joinder claim".[16] Such "structuring" does not *ipso facto* eliminate the public policy issue. The language of Judiciary Law §489 prohibits "be[ing] in any manner interested". Accordingly, even if Schorr and DeLuca have "structured" an arrangement that entails less than a 100% assignment, public policy is not thereby automatically ousted from consideration. And that is especially so considering that public policy decries both that which is outrightly illegal and that which is simply immoral. *Bankers Trust Co. v. Litton Systems, Inc., supra.*

---

[15]  We are aware that Mr. Schorr ("Schorr"), the principal of FCF, has a vision disability. We are also aware that he is an attorney who was suspended from the Florida Bar for conduct that involved "dishonesty, fraud, deceit, or misrepresentation". (See Exhibit "K" to the Kaplan Declaration.) While we are sympathetic to disabilities, they are not a proverbial get-out-of-jail-free card. Given the disturbing circumstances presented in this case, both the Court and we are entitled to ask hard questions of DeLuca and Schorr, and evaluate the truthfulness of their answers by way of their in-person live demeanor.

[16]  It appears from Docket No. 14, a declaration by DeLuca, that he or one his companies actually acquired the FCF judgment, but, for reasons similar to what occurred with Petro, is keeping that judgment in FCF's "name". In that regard, in para. 6 of Docket No. 14, DeLuca states: "In order to acquire the senior liens, I began discussions with two judgment creditors, Florida Corporate Funding and Dominque Milord". Notice that DeLuca referred to "acquir[ing]" the "senior liens" – in the plural. Although Docket No. 14 goes on to discuss only the Milord judgment, it is obvious from FCF's subsequent use of DeLuca's attorney that he probably acquired the FCF judgment as well. Especially against the background of the Petro situation, this cannot be dismissed out of hand, and certainly not without a live hearing of DeLuca and Schorr. (DeLuca's declaration in Docket No. 14 is Exhibit "L" to the Kaplan Declaration.)

It should be noted that although we believe that recognizing FCF's "joinder" runs afoul of public policy concerns, we are not arguing to the Court that FCF's "joinder" does not meet the "not disputed" test of 11 U.S.C. §303(b)(1). This does not mean that Green Group believes that FCF's judgment was properly obtained, that it cannot be challenged, or that, when challenged, that judgment will not ultimately fall. To the contrary, Green Group believes that FCF's default judgment against Zizi was improperly obtained and that it will ultimately fall.[17] However, even though it is subject to challenge and will, in our opinion, ultimately fall, FCF's judgment is *at this juncture* sufficient to qualify under the "not disputed" standard of 11 U.S.C. §303(b)(1), because, at this juncture, that judgment has not been stayed by the state court. *See*, *In re Amanat*, 321 B.R. 30, 37-38 (Bankr. S.D.N.Y. 2005), holding that even if a judgment is actually being challenged (such as by appeal), it nevertheless qualifies under 11 U.S.C. §303(b)(1) if it was not stayed at the time that the bankruptcy court considers the 11 U.S.C. §303(b)(1) issue. That at this juncture FCF's judgment meets the "not disputed" test does not, however, spare the use or prosecution of that judgment from public policy concerns.

## An Equitable Solution Suggested By Green Group

The combination of 11 U.S.C. §303(b)(1) issues regarding Beauvais and Rousseau and public policy issues regarding Petro and FCF may bring the number of petitioning creditors below the requisite "three". Nevertheless, we believe that there is an equitable solution that the Court can adopt which will enable it to honor the statutory requirement of "three" while not, in the process, dishonoring public policy issues.

---

[17] As Docket No. 39 indicates, Zizi challenged that judgment, but did not do so in a proper manner. Green Group will also be attacking that judgment, but in a proper manner and on grounds that will include and go beyond what Zizi has advocated. Docket No. 39 is Exhibit "M" to the Kaplan Declaration.

In this regard, we respectfully submit that since, on their face (and without considering public policy issues), the "joinders" of Petro and FCF meet the technical requirements of 11 U.S.C. §303(b)(1), the Court consider recognizing those "joinders" *for the limited purpose of meeting the "three" requirement and having this case proceed*. For any purpose *beyond that* however, we do not believe that this Court can disregard the public policy issues that are presented. We respectfully submit that if and when holders of the Petro claim or the FCF claim seek any other or future relief, the public policy issues must be considered and should bar relief.

We believe that this suggestion equitably balances the need for a Trustee with the need to respect public policy, and we ask the Court to consider this suggested solution.

Dated:  January 4, 2018

Respectfully submitted,

 */s/ Robert J. Kaplan*
_____

Robert J. Kaplan
Attorney for GREEN GROUP 11 LLC
80 Maiden Lane
Suite 1502
New York, NY 10038
(212) 964-0600
*lawkap@aol.com*