**McGlinchey Stafford**
112 West 34th Street, Suite 1515
New York, New York 10120
T: 646 362-4000
F: 646-439-8059
Brian S. McGrath, Esq.
Kristen D. Romano, Esq.

*Counsel for Fay Servicing, LLC as servicer for US Bank National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: : | Chapter 7 |
| Charles Zizi, : | |
| : | Case No. 16-44872 |
| Debtor. : | |
| : | |

## MOTION TO LIFT AUTOMATIC STAY

NOW INTO COURT, through undersigned counsel, comes Fay Servicing, LLC as servicer for US Bank National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust ("US Bank"), a secured creditor of debtor, Charles Zizi ("Debtor") in the above-captioned involuntary Chapter 7 case, who requests that this Court enter an order granting US Bank relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and 362(d)(2) to allow US Bank to exercise its contractual and state law rights against the property located at 220 Greene Avenue, Brooklyn, New York 11238 (the "Property") upon which US Bank holds a valid pre-petition security interest. In support of this motion, US Bank respectfully represents as follows:

### JURISDICTION AND VENUE

1. This Court is vested with subject matter jurisdiction to grant the relief sought herein pursuant to 28 U.S.C. §§ 1334(b) and 157(a).

2. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## CORE PROCEEDING

3. This matter is a "core proceeding" under 11 U.S.C. § 362 and 28 U.S.C. § 157(b)(2)(G) and this Honorable Court may enter an appropriate final order or judgment herein, in accordance with 28 U.S.C. § 157(b).

## PROCEDURE

4. Procedurally, this matter is governed by the Federal Rules of Bankruptcy Procedure 4001 and 9014.

## FACTUAL BACKGROUND

5. Debtor executed and delivered an original Note, dated October 17, 2006 (the "Note"), in favor of American Brokers Conduit ("American") in the original principal amount of One Million and 00/100 Dollars ($1,000,000.00). The Note is indorsed, without recourse, in blank. A true and correct copy of the Note is attached hereto as **Exhibit A**.

6. As security for the Note, Debtor executed and delivered a Mortgage, dated October 17, 2006 (the "Mortgage"), in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as mortgagee as nominee for American, its successors and assigns, on the Property. The Mortgage was recorded with the City Register of the City of New York on November 3, 2006, under City Register File Number ("CRFN") 2006000616135. A true and correct copy of the Mortgage is attached hereto as **Exhibit B**.

7. The original Note and Mortgage were transferred to Countrywide Home Loans, Inc. ("Countrywide"). The transfer of the Mortgage to Countrywide is reflected by an Assignment of Mortgage (the "First Assignment") from MERS, as nominee for American, its successors and assigns,to Countrywide, dated July 3, 2008, and recorded with the City Register

of the City of New York on July 17, 2008 under CRFN 2008000284126. A true and correct copy of the First Assignment is attached hereto as **Exhibit C.**

8. Sometime after the transfer of the Note to Countrywide, Bank of America, N.A. ("BANA"), as servicer and custodian for Countrywide, after conducting a thorough and diligent manual search of the hard copy collateral file and the credit file pertaining to the Loan, determine that the original Note had been lost. Accordingly, BANA prepared a Lost Note Affidavit, which included a copy of the original Note, dated April 16, 2013. A true and correct copy of the Lost Note Affidavit is attached hereto as **Exhibit D.**

9. The original Lost Note Affidavit, together with a copy of the indorsed note, and Mortgage were then transferred to Christiana Trust, a Division of Wilmington Savings Fund Society, FSB, not in its Individual Capacity but as Trustee of ARLP Trust 5 ("Christiana Trust"). The transfer of the Mortgage to Christiana Trust is reflected by an Assignment of Mortgage (the "Second Assignment") from Countrywide to Christiana Trust, dated January 28, 2016, and recorded with the City Register of the City of New York on March 14, 2016 under CRFN 2016000087988. A true and correct copy of the Second Assignment is attached hereto as **Exhibit E**.

10. The original Lost Note Affidavit, together with a copy of the indorsed note, and Mortgage were then transferred to US Bank. The transfer of the Mortgage to US Bank is reflected by an Assignment of Mortgage (the "Third Assignment") from Christiana Trust to US Bank, dated June 30, 2017, and recorded with the City Register of the City of New York on July 24, 2017 under CRFN 2017000271292. A true and correct copy of the Third Assignment is attached hereto as **Exhibit F**.

11. Debtor defaulted on the loan by failing to make the requisite monthly payments as required under the Note starting July 1, 2007, and the Mortgage has not been satisfied or otherwise discharged. The Mortgage remains a recorded lien on the Property with $1,525,576.10 due and owing as of October 28, 2016. A true and correct copy of the Payoff Calculation Tables with figures as of October 28, 2016 are attached hereto as **Exhibit G**.

## THE FORECLOSURE PROCEEDING

12. Under the terms of the Note, Debtor was obligated to pay monthly payments to US Bank. *See,* Exhibit A.

13. Payments on the Note are in default for the July 1, 2007 payment and all subsequent payments. *See,* the Form[1], ¶ 11.

14. Countrywide, US Bank's predecessor in interest, commenced a foreclosure proceeding captioned *Countrywide Home Loans Inc. v. Charles H. Zizi a/k/a Charles Zizi, et al.*, bearing index number 21346/2008, in the Supreme Court of the State of New York, County of Kings, on July 22, 2008 (the "Foreclosure Action").

15. The Foreclosure Action was administratively dismissed pursuant to NY CPLR 3216 by order dated January 16, 2014, but may be restored by motion of US Bank as dismissal of the Foreclosure Action did not comply with NY CPLR 3216(b)(3).

## RELIEF REQUESTED

16. US Bank requests that, pursuant to Bankruptcy Code § 362(d), this Honorable Court terminate the automatic stay of § 362(a) to permit US Bank to exercise its contractual and state law rights against the Property upon which US Bank holds a recorded pre-petition security interest by continuing the Foreclosure Action. Stay relief is warranted under

---

[1] The "Form" refers to the "Form for Motions for Relief from Stay to Foreclose a Mortgage on Real Property or a Security Interest in a Cooperative Apartment" executed by Brian Gaske, of Fay Servicing, LLC, servicer for US Bank, sworn to February 23, 2018 and submitted herewith.

11 U.S.C. §§ 362(d)(1) and 362(d)(2), because US Bank's interest in the Property is not adequately protected and Debtor does not have equity in the Property.

## LAW AND ARGUMENT

**11 USC. § 362(d)(1)**

17. Section 362(d)(1), provides, in relevant part, that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic] stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest. . . ." 11 U.S.C. § 362(d)(1).

18. It is well settled that "the failure to make mortgage payments constitutes 'cause' for relief from the automatic stay and is one of the best examples of a 'lack of adequate protection' under Section 362(d)(1) of the Bankruptcy Code." *In re Schuessler*, 386 B.R. 458, 480 (Bankr. S.D.N.Y. 2008); *see also Campora v. HSBC Bank USA, N.A. (In re Campora)*, 2015 WL 5178823, at *5 (E.D.N.Y. Sept. 3, 2015) ("A debtor's failure to make post-petition mortgage payments constitutes sufficient cause to modify an automatic stay."); *In re Elmira Litho, Inc.*, 174 B.R. 892, 903 (Bankr. S.D.N.Y. 1994) ("Without quantifying the decline in value, the creditor can often establish its *prima facie* case by demonstrating that the debtor has completely failed, or substantially failed, to make post-petition payments."). In this case, no payment of any kind has been made since at least June 1, 2007.

19. The Second Circuit has further adopted the "*Sonnax* Factors" when determining whether "cause" exists to grant relief from the automatic stay. *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990). These factors include:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with

>the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Id.*

20. As this Court has noted, a movant need not satisfy all of the *Sonnax* Factors when making a determination to grant relief from the automatic stay and "should weigh the particular circumstances of each case to reach the solution that is most just to all parties." *In re Fierro*, 2015 WL 3465753, at *5 (Bankr. E.D.N.Y. May 29, 2015).

21. Here, application of the *Sonnax* Factors weighs in favor of granting the requested relief.

22. Specifically, granting relief from the automatic stay to proceed with the Foreclosure Action will not harm or otherwise interfere with the ongoing bankruptcy proceeding or in any away prejudice the other creditors. Rather, a resolution of the Foreclosure Action will resolve any issues relating to the Property with the eventual Chapter 7 trustee being noticed of any surplus monies resulting from the foreclosure sale of the Property to then be distributed to the remaining bankruptcy creditors.

23. Moreover, lifting the stay and permitting litigation to proceed in the state court will be in the interest of judicial economy as the state court is in the best position to address state law defenses to foreclosure as well as procedural deficiencies in the underlying state court action. *In re Everton Aloysius Sterling Debtor.*, 2018 WL 313085, at *5 (Bankr. S.D.N.Y. Jan.

5, 2018) *citing In re Residential Capital, LLC,* 2012 WL 3423285, at *7 (Bankr. S.D.N.Y. Aug. 14, 2012) (noting that state court is in the best position to address state law defenses to foreclosure).

24. Finally, the balance of the harms tips in US Bank's favor due to Debtor's long history of non-payment. *Thompson v. JP Morgan Chase Bank, N.A. (In re Thompson)*, 2012 WL 739384, at *6 (E.D.N.Y. Mar. 8, 2012) (Finding cause where the debtor was not making mortgage payments, the secured creditor had begun foreclosure proceedings in state court, and the secured creditor continued to expend money for taxes and insurance on the property in question).

**11 U.S.C. § 362(d)(2)**

25. Section 362(d)(2) of the Bankruptcy Code provides, in pertinent part, that a bankruptcy court shall grant relief from the automatic stay against property of the estate if the "debtor does not have any equity in such property; and . . . such property is not necessary to an effective reorganization . . . ." 11 U.S.C. § 362(d)(2). Stay relief is warranted in this case under § 362(d)(2) for the following reasons:

26. First, there is no equity in the Property. A Broker's Price Opinion ("BPO") completed on July 19, 2017 estimates the value of the property at $1,699,000.00. A true and correct copy of the July 19, 2017 BPO is attached hereto as **Exhibit H**. As of the Petition Date, the amount of principal, interest and accrued charges due under the Note was $1,525,576.10 and there have been no fewer than 127 missed payments. *See*, the Form, ¶ 11. Moreover, pursuant to the Involuntary Petition and Debtor's Answer, there is a judgment lien in the amount of $28,083.98, in favor of creditor, Randall Funding attached to the Property[2] [Doc. No. 1, 3], as

---

[2] This lien was allegedly assigned to creditor, Green Group 11, LLC, but the lien remains unsatisfied. [Doc. No. 49.]

well as an alleged judgment lien in the amount of $1,800,000.00[3] in favor of creditor, Florida Corporate Funding, Inc. [Doc. No. 7-1]. As a result, the value of the Property is substantially less than the outstanding indebtedness.

27. Because the total amount of the liens against the Property exceeds its value, there is no equity in the property as that term is used in § 362(d)(2). *In re YL W. 87th Holdings I LLC*, 423 B.R. 421, 428 (Bankr. S.D.N.Y. 2010) (*citing Stewart v. Gurley*, 745 F.2d 1194, 1195 (9th Cir. 1984) ("equity [is] the difference between the property value and the total amount of the liens against it")); *see also In re Garsal Realty, Inc.,* 98 B.R. 140, 154 (Bankr. N.D.N.Y. 1989) (equity is "the remaining interest belonging to one who pledged or mortgaged his property, or the surplus value which may remain after the property has been disposed of for the satisfaction of liens.").

28. Second, since this is a Chapter 7 bankruptcy proceeding, the Property is not necessary to an effective reorganization, nor is reorganization contemplated as a matter of law. *See B.N. Realty Assocs. v. Lichtenstein*, 238 B.R. 249, 258 (S.D.N.Y. 1999) ("Since a Chapter 7 petition does not contemplate reorganization, the only issue in a Chapter 7 case under 362(d)(2) would be whether [the debtor had] equity in the property.").

29. Finally, to the extent Debtor may allege the Note and Mortgage are no longer enforceable as a result of alleged statute of limitations issues, the "granting or denying a stay relief motion is not and should not be considered a determination of the ultimate enforceability or unenforceability of the note and lien at issue." *In re Escobar*, 457 B.R. 229, 236 (Bankr. E.D.N.Y. 2011).

---

[3] Florida Corporate Funding, Inc. has asserted that its judgment lien is in the amount of $3,261,120.00, significantly greater than the amount alleged by Debtor. [Doc. No. 11.]

**WHEREFORE**, US Bank, prays that this Honorable Court:

A. Vacate, modify, and lift the automatic stay so as to permit US Bank to exercise all of its contractual and legal rights against the Property;

B. Waive the 14-day stay prescribed by Federal Rule of Bankruptcy Procedure 4001(a)(3); and

C. Grant US Bank such other and further relief as is just and equitable.

Dated: February 23, 2018  MCGLINCHEY STAFFORD
New York, New York

By: ___/s/ Kristen D. Romano_____
Brian S. McGrath, Esq.
Kristen D. Romano, Esq.
112 West 34th Street, Suite 1515
New York, New York 10120
Ph: (646) 362-4000
Fax: (646) 439-8059

*Counsel for Fay Servicing, LLC as servicer for as servicer for US Bank National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust*